UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LATAVIOUS BEAL,

        Plaintiff,                  Case No. 1:21-cv-522

v.                                       Hon. Hala Y. Jarbou

JOHN DAVIDS, et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant ICF Mail Room. The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment due process claim against the remaining Defendants.

**Discussion**

I.  **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the ICF Mail Room, ICF Warden John Davids and the following ICF employees whose positions Plaintiff does not indicate: Phyllis Clement, Scott Koster, and Unknown Karber.

Plaintiff alleges that he received stimulus funds from the federal government as part of its effort to address issues posed by the ongoing COVID-19 pandemic, but ICF staff used those funds to pay Plaintiff's various debts. On April 30, 2021, Plaintiff received a tax refund of $1,800 from the federal government. He asserts that the government dispensed $1,200 of the funds pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, *see* 26 U.S.C. § 6428(a)(1), and the federal government dispensed an additional $600 pursuant to the Consolidated Appropriations Act of 2021 (CAA), *see* 26 U.S.C. § 6428A(a)(1). To request these funds, Plaintiff filed a tax return claiming $1,800 in tax credits, as authorized by the stimulus bills, which resulted in his $1,800 income tax refund. (*See* Ex. B to Compl., ECF No. 1-2, PageID.15.) Those funds were deposited into his prisoner trust account.

On May 3, 2021, soon after Plaintiff received his $1,800 refund, Plaintiff sent a kite requesting information and noting that the "second round payment [was] exempt from collection from M.D.O.C." (Ex. D to Compl., ECF No. 1-4, PageID.25.) On May 5, 2021, before he received a response to his May 3 kite, he sought to purchase three magazine subscriptions. ICF staff denied his request because he lacked sufficient funds. At some point, Plaintiff learned that a hold had been placed on the full $1,800 to pay debts he owed to state and federal courts and to the MDOC. (*See* Ex. A to Compl., ECF No. 1-1, PageID.12; Ex. D to Compl., ECF No. 1-4, PageID.25.)

2

MDOC later deducted funds from his account on May 10, 2021, to pay Plaintiff's state and federal court costs. (ECF No. 4-1, PageID.39.) MDOC deducted further funds to pay Plaintiff's MDOC debts on May 31, 2021. (*Id.*, PageID.39–42.)

Plaintiff alleges that $600 of the funds were issued pursuant to 26 U.S.C. § 6428A, and therefore were exempt from any type of seizure to pay debts other than child support. For support, Plaintiff relies upon an MDOC internal memorandum issued on January 14, 2021, which advised that "MDOC cannot satisfy debts with the second-round payment" and that staff should log the payment as a different type of income. (Ex. B to Compl., ECF No. 1-2, PageID.14.) Plaintiff further alleges that Michigan's Office of the Attorney General has acknowledged in uncited court filings that funds issued pursuant to the CAA must not be seized or garnished to pay debts. Thus, believing that the $600 issued to him pursuant to the CAA had been improperly applied to his debts, Plaintiff filed a grievance. In the response to his Step-I grievance, Defendants Karber and Clement asserted that because the IRS had issued the entire $1,800 payment as a tax refund, MDOC did not classify the funds as a protected economic impact payment. Defendant Davids upheld that determination on Plaintiff's Step-II appeal.

Plaintiff seeks damages in excess of $23,000, costs, and fees. In Plaintiff's statement of jurisdiction, he further asserts that he seeks declaratory and injunctive relief. (Compl., ECF No. 1, PageID.1.)

## II. **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Sovereign Immunity

To the extent Plaintiff intends to name the ICF Mail Room as a party, his claims against it fail. The ICF Mail Room is a location within ICF; it is not an individual, office, or organization. Reading the complaint with all due liberality, *see Haines*, 404 U.S. at 520, the Court

will presume that Plaintiff intends to name ICF as a Defendant. An express requirement of 42 U.S.C. § 1983 is that the defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). ICF is an administrative unit of the Michigan Department of Corrections. Neither a prison nor a state corrections department is a "person" within the meaning of section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).

Furthermore, Plaintiff's claim against this Defendant is barred by the Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). That amendment prohibits suits in federal court against the state or any of its agencies or departments. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), *superseded by statute on other grounds*, 28 U.S.C. § 1367. A state's Eleventh Amendment immunity is in the nature of a jurisdictional defense and may be raised on the court's own motion. *Est. of Ritter v. Univ. of Mich.*, 851 F.2d 846, 852 (6th Cir. 1988). The Supreme Court has squarely held that the Eleventh Amendment bars federal suits against state departments of corrections. *Alabama*, 438 U.S. at 782. ICF is therefore not subject to a section 1983 action.

IV. **Fourteenth Amendment**

Plaintiff's due process claim against the remaining Defendants is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and

5

prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Michigan law authorizes actions in the Court of Claims asserting "any claim or demand . . . against the state or any of its departments or officers" where a plaintiff seeks "monetary, equitable, or declaratory relief . . . ." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has found that Michigan law provides "several adequate post-deprivation remedies" to a prisoner asserting improper removal of money from his prison account. *Copeland*, 57 F.3d at 480. In a number of cases involving the taking of prisoner funds, the Sixth Circuit has affirmed dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate. *Id.* at 479–80 (money wrongfully removed from prison account); *Mowatt v. Miller*, No. 92-1204, 1993 WL 27460, at *1 (6th Cir. Feb. 5, 1993) (misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85-2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his funds. Accordingly, Plaintiff's complaint fails to state a due process claim.

V.  **CAA**

Reading Plaintiff's complaint with all due liberality, *see Haines*, 404 U.S. at 520, Plaintiff asserts a cause of action under the CAA.

A.   Section 272

While not yet fully codified within the United States Code, portions of the CAA beyond 26 U.C.C. § 6428A are relevant to Plaintiff's putative claim. The CAA is a wide-ranging body of legislation that appropriates federal funds for fiscal year 2021 and responds to needs created by the COVID-19 pandemic. H.R. 133, 116th Cong. (2020), *enacted as* Pub. L. No. 116-260, 134 Stat. 1182, https://www.congress.gov/116/bills/hr133/BILLS-116hr133enr.pdf. The full text of the enacted bill encompasses a hefty 2,124 pages. *See id.*

The portion of the legislation relevant to this action is found in CAA, Division N, Title II (Title II), Section 272. *See* Title II, § 272, 134 Stat. 1965. Subsection (a) expressly creates 26 U.S.C. § 6428A, which, in part, provides for $600 payments to eligible individuals. *Id.* § 272(a); *see also* 26 U.S.C. § 6428A(a)(1). Subsection (d), which at this time has not been codified into the United States Code, further specifies that "no applicable payment shall be subject to, execution, levy, attachment, garnishment, or other legal process, or the operation of any bankruptcy or insolvency law." Title II, § 272(d)(2)(A), 134 Stat. 1972. Payments transferred through the Automated Clearing House (ACH) must "issue the payment using a unique identifier that is reasonably sufficient to allow a financial institution to identify the payment as an applicable payment." *Id.* § 272(d)(2)(B), 134 Stat. 1972. Where the applicable payment lacks a unique identifier—for example, if it has been deposited by check—the financial institution must, on the request of the account holder, treat the funds as if they were uniquely identified. *See* § 272(d)(2)(C)(ii), 134 Stat. 1973. Such a designation protects the funds from direction by a "State or State agency . . . to effect a garnishment against a debtor." § 272(d)(2)(E)(v), 134 Stat. 1974.

B.  **Private right of action**

Notwithstanding Plaintiff's allegations, whether Section 272 provides a private cause of action appears to raise a question of first impression. Thus, as a preliminary issue, the Court must resolve whether Section 272 creates a private cause of action.

To establish whether a statute provides for a private cause of action, a court must look to the statute and legislative history to determine whether Congress expressly or implicitly communicated its intention to create a private remedy. *See Transamerica Mortg. Advisors, Inc. v. Lewis* (*TAMA*), 444 U.S. 11, 15–17 (1979). "[T]he failure of Congress expressly to consider a private remedy" either in the text of the act or in the act's legislative history "is not inevitably inconsistent with an intent on its part to make such a remedy available." *Id.* at 18 (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694 (1979)). A court may infer Congress' intent from "the language or structure of the statute, or in the circumstances of its enactment." *Id.*

The *TAMA* Court itself inferred a private cause of action in one of the two sections it examined, Section 215 of the Investment Advisers Act (IAA) of 1940, 15 U.S.C. §§ 80b-1 to 80b-21.[1] *See id.* Although neither the statute nor the legislative history expressly answered whether Congress intended to create a private right of action, the Court focused its attention to the statute's function. Section 215 voided certain contracts. *See id.*; *see also* 15 U.S.C. § 80b-15. The Court inferred that Congress intended Section 215 to create a private cause of action, which would allow private parties to litigate the voidness of the applicable contracts and issues incidental to it such as suits for recission, injunctive relief, and restitution. *See id.* at 19.

---

[1] Section 215 is codified in the United States Code at 15 U.S.C. § 80b-15.

In contrast, the *TAMA* Court concluded that Section 206 of the IAA did not create a private cause of action.[2] The Court noted that Section 206 merely prohibited conduct (e.g., deception of a client, fraud) by designating it as unlawful; the Section did not create any private civil liability. *See id.*; *see also* 15 U.S.C. § 80b-6. Thus, the Court concluded, "[i]f monetary liability to a private plaintiff is to be found, it must be read into [Section 206]." *TAMA*, 444 U.S. at 19. The Court further noted that under the IAA, the Government had adequate criminal and civil means to enforce Section 206. Weighing these factors, the Court could not infer that Congress intended Section 206 to create a private cause of action.

Here, the pertinent characteristics of Section 272 of Title II more closely resemble those of IAA's Section 215 rather than of IAA's Section 206. Unlike Section 215 and Section 272, Section 206 merely proscribes specific types of conduct. Section 215 and Section 272 each create specific private benefits. As with Section 215, Section 272 arguably contemplates litigation. For example, a private party may conceivably need to raise Section 272 defensively to ensure that relevant funds are not subjected to a levy, garnishment, judgment order. The *TAMA* Court encountered a similar issue. The *TAMA* Court rejected the notion that a private party could raise Section 215 *only* defensively and instead concluded that a private party also had an affirmative right to raise Section 215 as a cause of action. 444 U.S. at 18. Thus, the statutory language of Title II's Section 272 would seem to fairly imply the right to a private cause of action.

Adding further support, at least one district court has permitted a private cause of action to proceed under 26 U.S.C. § 6428, which parallels § 6428A. *See Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 669, 692 (N.D. Cal. 2020). Thus, at this early juncture, the Court will presume that Section 272 provides a limited private cause of action.

---

[2] Section 206 is codified in the United States Code at 15 U.S.C. § 80b-6.

C. **Claim**

As a preliminary matter, it is unclear whether the MDOC is a "financial institution." Title II does not define the term. The MDOC administers the trust accounts of the prisoners in its custody and accepts the relevant payments from the federal government. Additionally, the MDOC appears capable both of effectuating garnishment orders and of notating exempt payments. Therefore, the Court will presume that the MDOC operates as a financial institution under Title II.

Plaintiff has alleged that $600 of the $1,800 deposited into his account was issued to him pursuant to 26 U.S.C. § 6428A. Those funds would qualify as an "applicable payment." *See* Title II, § 272(d)(2)(E)(iii)(I), 134 Stat. 1974.

Title II arguably mandated Defendants to treat $600 of Plaintiff's funds as exempt from garnishment. Plaintiff's allegations do not clearly indicate whether the applicable payment was issued with an appropriate unique identifier as directed by Section 272(d)(2)(B). Nevertheless, Plaintiff's May 3, 2021, kite requested that ICF and the MDOC treat $600 of Plaintiff's $1,800 payment as exempt from garnishment, because it was a payment under the CCA. Although the MDOC or ICF had placed holds on his account by that point, the first deductions from his account did not occur until May 10, 2021—a week after Plaintiff's kite. The remainder of his funds were deducted several weeks later.

Plaintiff's complaint and attachments suggest that Defendants seized on a technicality—that his payment arrived as a federal tax refund rather than as an encoded economic impact payment. Yet, the Defendants appeared to act in three capacities simultaneously: the financial institution obligated to treat Plaintiff's funds as exempt under Title II, a creditor to whom Plaintiff owed debts, and the State agency capable of directing a garnishment of Plaintiff's funds to pay the creditor. That conflict could plausibly give Defendants a reason to justify seizing Plaintiff's funds to pay his debts. However, Title II provides a secondary method for protecting

relevant payments from garnishment. Plaintiff appears to have employed that secondary method when he sent his kite on May 3, 2021.

In short, Title II arguably mandated that Defendants—corrections officers at the financial institution holding Plaintiff's funds—treat $600 of Plaintiff's funds as exempt from garnishment. Plaintiff alleges that they did not. Although a safe harbor provision of Title II, exists, *see* Section 272(d)(2)(C)(iii), 134 Stat. 1973, Plaintiff's allegations suggest that Defendants do not qualify. Thus, Plaintiff has alleged facts sufficient to state a claim under Title II, Section 272.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant ICF Mail Room will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the Plaintiff's Fourteenth Amendment due process claims against the remaining. Plaintiff's Title II, Section 272, claim against Defendants Davids, Clement, Koster, and Karber remains in the case.

An order consistent with this opinion will be entered.

Dated: July 13, 2021   /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE