UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATAVIOUS BEAL #327749,

    Plaintiff,                                      Hon. Hala Y. Jarbou

v.                                                 Case No. 1:21-cv-522

HEIDI WASHINGTON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Latavious Beal, a Michigan prisoner incarcerated with the Michigan Department of Corrections (MDOC), received two COVID-19 pandemic stimulus payments from the federal government, one of $1,200 and the other of $600, while incarcerated at the Ionia Correctional Facility (ICF). Both amounts, paid in a single sum, were deposited into Beal's prisoner trust account but subsequently were used to pay his debts to the state and federal courts and the MDOC. Beal alleges that the $600 payment was improperly seized because it was exempt from any type of seizure to pay debts, other than child support, pursuant to 26 U.S.C. § 6428A. He has sued Defendants Heidi Washington, John Davids, Phyllis Clement, Scott Koster, and Steve Karber pursuant to 42 U.S.C. § 1983, alleging that they violated his right to due process under the Fourteenth Amendment by seizing the funds without notice and a hearing.

This matter is before me on Defendants' Motion for Summary Judgment (ECF No. 67), in which they assert that Beal failed to exhaust his administrative remedies prior to filing this action and, alternatively, that his claims are otherwise subject to dismissal. The matter is fully briefed and ready for decision, as Beal has filed a response, and Defendants have filed a reply. (ECF Nos. 46 and 47.) For the reasons that follow, pursuant to 28 U.S.C. § 636(1)(B), I recommend that the

1

Court **GRANT** Defendants' motion on the ground that Plaintiff failed to exhaust his administrative remedies and **dismiss** this action **without prejudice**.

## I. Background and Procedural History

To address the economic impact of the COVID-19 pandemic, Congress passed several stimulus laws that authorized direct payments to eligible American adults. The first statute, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), was passed on March 27, 2020, and provided for $1,200 stimulus payments. Pub. L. 116-136, 134 Stat. 281 (2020), *codified in part at* 26 U.S.C. § 6428. The second stimulus statute, the Consolidated Appropriations Act (CAA), was passed on December 27, 2020, and provided a $600 stimulus payment. Pub. L. 116-260, 134 Stat. 1182 (2020), *codified as* 26 U.S.C. § 6428A. Incarcerated persons are not exempt from payments under either the CARES Act or the CAA. *See Wilcox c. Mnuchin*, No. 2:20-cv-211, 2021 WL 21729, at *4 (W.D. Mich. Jan. 4, 2021) (citing *Scholl v. Mnuchiin*, 494 F. Supp. 3d 661, 689, 692 (N.D. Cal. 2020)). CARES Act payments are subject to garnishment by the eligible individual's creditors. In contrast, the $600 payments under the CAA are exempt from garnishment or attachment by creditors by virtue of the following provision: "The right of any person to any applicable payment shall not be transferable or assignable, at law or in equity, and no applicable payment shall be subject to, execution, levy, attachment, garnishment, or other legal process, or the operation of any bankruptcy or insolvency law." Pub. L. 116-26- § 272)(d)(2)(A), 134 Stat. 1182, 1972 (2020).

On January 14, 2021, the MDOC issued a memorandum concerning prisoner stimulus payments. With regard to CAA payments, the memorandum stated that "MDOC cannot satisfy debts with the second-round payment." It further advised that "[a] new income type [had been] created to make the second-round payment exempt from collection—staff should use income type

2

'Economic Impact Payment – DE' for only the second payment to ensure automated deductions for debts are not applied." (ECF No. 1-2 at PageID.14.)

On April 30, 2021, Beal received a deposit from the Internal Revenue Service in the amount of $1,800.15, which was identified as a "Tax Refund." (ECF No. 45-2.) On May 3, 2021, Beal sent a kite noting that he had received a receipt for the $1,800 deposit and inquiring how much of the funds he would receive. He also referred to the January 14, 2021 MDOC memorandum and noted that the second-round stimulus payment was exempt from collection. A notation on the kite dated May 7 states, "Full $1,800 was subject to obligation." (ECF No. 1-4 at PageID.25.) On May 5, 2021, Beal sought to purchase three magazine subscriptions with his stimulus funds, but he was advised that his account had insufficient funds. (*Id.* at PageID.23–24.) On May 9, 2021, Beal filed a grievance questioning why the CAA portion of the stimulus payment, which was exempt, was removed from his account. The grievance, assigned No. ICF-21-05-0647-01B (the 0647 Grievance), was denied on May 19, 2021, on the basis that the entire $1,800 payment was classified as a tax refund, rather than an economic impact payment (EIP), or stimulus payment. (ECF No. 1-3 at PageID.18–19.)

On May 10, 2021, the MDOC withdrew various amounts from Beal's prison trust account, including $183 to satisfy court costs payable to Berrien County Circuit Court in Case No. 201700262-FH; $350 to satisfy a filing fee for a case in this Court;[1] $875.07 to cover victim

---

[1] Although Ryan Bolton, a financial analyst for the MDOC, states in his affidavit that the $350 paid to this Court was to satisfy the filing fee in the instant case (ECF No. 45-4 at PageID.247), that statement is inaccurate, as the docket report in this action does not reflect receipt of $350, or any other amount against the filing fee, and Beal had not even filed this action at the time the funds were withdrawn in May 2021. It appears instead that the amount was to satisfy the filing fee in Case No. 1:21-cv-109. (*See* ECF No. 45-4 at PageID.253; Case No. 1:21-cv-109 (entry of Nov. 4, 2021 reflecting payment of $350).)

3

restitution; and $490.07 to cover Beal's obligations to the MDOC. (ECF No. 45-4 at PageID.246–48.)

Proceeding pro se, Beal filed his complaint in this case on June 22, 2021, against Defendant Davids, the ICF Warden; Defendant Clement, the Facility Manager for ICF; Defendant Koster; Defendant Karber, a Mail Room Supervisor at ICF; and the ICF Mail Room. (ECF No. 1.) After reviewing the complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c), the Court dismissed the ICF Mail Room and Plaintiff's Fourteenth Amendment due process claim against the remaining Defendants, but allowed Plaintiff's claim under Title II, Section 272 of the CAA against Defendants Davids, Clement, Koster, and Karber to proceed. (ECF No. 8 at PageID.62, 72.) Several months later, Plaintiff's present counsel appeared, filed a First Amended Class Action Complaint asserting only a Fourteenth Amendment due process claim and adding MDOC Director Defendant Washington in her official capacity, and moved for reconsideration of the prior order dismissing the due process claim. (ECF Nos. 18 and 20.) On November 30, 2021, the Court granted the motion and reinstated the due process claim.[2] (ECF No. 23.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

---

[2] Pursuant to a stipulation and order entered on March 3, 2018, Beal agreed not to seek class certification, and Defendants agreed to provide any relief that Plaintiff receives in this action to other inmates who also had exempt stimulus funds removed from their accounts. (ECF No. 40.)

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Defendants move for summary judgment on several grounds. As explained below, because Beal failed to exhaust his administrative remedies prior to filing suit, dismissal without prejudice is required. Therefore, Defendants' remaining grounds need not be addressed.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to

5

exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within 10 business days of the response, or if no response was received, 10 business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within 10 business days after receiving

6

the Step II response, or if no Step II response was received, within 10 business days after the date the Step II response was due. *Id.*

As noted above, Beal filed the 0647 Grievance on May 9, 2021, and the Step I response was issued on May 19, 2021. (ECF No. 45-3 at PageID.240–41.) Beal filed his Step II appeal on May 25, 2021. The Step II response was issued on June 2, 2021, and returned to Beal the same date. (*Id.* at PageID.242–43.) Beal sent his Step III appeal to the Grievance Section of the MDOC's Office of Legal Affairs on June 3, 2021, and it was received by that office on June 6, 2021. (*Id.* at PageID.242, 244.) The Office of Legal Affairs issued its decision upholding the grievance denial on September 8, 2021. (*Id.*) Plaintiff filed his complaint on June 22, 2021.

Defendants contend that the Court should dismiss this case without prejudice in its entirety because Beal did not fully comply with the MDOC's grievance process before filing this action. (ECF No. 45 at PageID.219–20.) This argument has merit. Proper exhaustion requires that the prisoner complete the administrative process before filing his complaint. *See, e.g.*, *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999) (stating that "we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"); *Larkins v. Wilkinson*, No. 97-4183, 1998 WL 898870, at *2 (6th Cir. Dec.17, 1998) (holding that the prisoner's "attempt to exhaust his available administrative remedies only after filing suit in federal court ignore[d] the clear mandate of § 1997e(a)"). As noted above, the Grievance Section of the MDOC's Office of Legal Affairs received Plaintiff's Step III appeal on June 6, 2021. The MDOC's grievance policy provides that "Step III responses will be responded to within 60 business days." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ II. Beal failed to complete the exhaustion process by waiting to receive a Step III response, or allowing the 60-business-day period to expire, before filing his complaint in federal court.

7

Beal provides no response to this argument. (ECF No. 46 at PageID.304–06.) Instead, he responds only to Defendants' alternative exhaustion argument that he failed to properly exhaust his claims against Washington, Davids, and Karber because he failed to name them in his Step I grievance. But that is a separate issue. Because Beal failed to address this issue in his response, he has waived any argument he may have excusing or explaining his failure to exhaust prior to filing this action.[3] *See Akaazua v. Walker Novak Legal Grp., LLC*, No. 19-2183, 2021 WL 4097500, at *1 (6th Cir. Jan. 8, 2021) ("The district court did not err in granting the motions to dismiss filed by Imperial Valley Properties and MERS because Akaazua's failure to respond constituted a waiver of any argument that the dismissal was improper."); *Gomery v. Continental Cas. Co.*, No. 1:13-cv-947, 2014 WL 4209648, at *4 (W.D. Mich. Aug. 25, 2014) ("Plaintiffs' failure to respond to Defendant's business-enterprise-exclusion argument amounts to a waiver of their argument on the issue and a fatal omission in this case."). Accordingly, there is no need to address Defendants' alternative exhaustion argument or their merits-based arguments.

## IV. Conclusion

For the foregoing reasons, I recommend that the Court grant Defendants' motion for summary judgment (ECF No. 44) on the ground that Beal failed to exhaust his administrative

---

[3] Beal's filing of an amended complaint asserting claims that arose before he filed the original complaint but failed to exhaust prior to that time does not save his claims from dismissal without prejudice. *See Dahms v. Correct Cre Solutions, LLC*, No. 3:18-CV-63, 2019 WL 4544350, at *4 (W.D. Ky. Sept. 19, 2019) (concluding that the plaintiff's amended complaint could not cure his failure to exhaust any of his claims prior to filing his original complaint); *Jackson v. Saverhood*, No. 11-13173, 2013 WL 4507865, at *5 (E.D. Mich. Aug. 23, 2013) (noting that "a plaintiff who pleads unexhausted or improperly exhausted claims cannot come into compliance with the PLRA's exhaustion requirements by simply re-pleading those claims in an amended complaint after proper exhaustion (citing, among others, *Freeman*, 196 F.3d at 645; *Fisher v. Ohio Dep't of Corr.*, No. 1:06cv559, 2009 WL 2246183, at *5 (S.D. Ohio July 23, 2009))).

remedies prior to filing this action as required by the PLRA, and dismiss Beal's claims against Defendants without prejudice.

Dated: October 18, 2022                              /s/ Sally J. Berens
                                                     SALLY J. BERENS
                                                     U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).